<hr />

VALLEY COUNTY v. McLEAN.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1897.)

No. 835.

1. COUNTIES—VALIDITY OF BONDS.
   Under the Nebraska Laws of 1877 and 1879, authorizing county commissioners to issue coupon bonds sufficient to pay the outstanding warrants and indebtedness, with the proviso "that in no event shall bonds be issued to a greater amount than ten per cent. of the assessed valuation of such county," the ten per cent. limitation is confined to the bonds to be issued under the provisions of these acts, without regard to bonds previously issued. 74 Fed. 389, affirmed.

SAME.
   Where a statute authorized a county to issue bonds to an amount not exceeding a certain per cent. of the assessed valuation of the county, a

purchaser of the bonds, in determining whether the aggregate issue exceeded the statutory limit, had the right to rely upon the abstract of assessment of property in the county made by the county clerk, and by him certified to the auditor of the state; that being a public record of the assessment, which the statute required to be so made and transmitted after the assessment books had been equalized and corrected by the county board, and the county will not be allowed to question its verity. 74 Fed. 389, affirmed.

3. SAME.

Under a statute (Laws Neb. 1879, p. 364, § 30), authorizing a county to issue its bonds provided the county board shall first submit the question to a vote of the electors of the county, and further providing that "if it appears that two-thirds of the votes cast are in favor of the proposition, and the requirements of the law have been fully complied with, the same shall be entered at large by the county board upon the book containing the record of their proceedings, and they shall then have power to levy and collect the special tax," a purchaser of the bonds need look no further than this record to determine whether there has been a compliance with the requirements of the law. 74 Fed. 389, affirmed.

In Error to the Circuit Court of the United States for the District of Nebraska.

This was an action at law brought by Hector McLean against the county of Valley, in the state of Nebraska, upon overdue coupons upon certain county bonds. Judgment having been rendered in favor of plaintiff, the defendant brought this writ of error. The opinion of the circuit court is reported in 74 Fed. 389.

The legislature of the state of Nebraska passed an act approved February 17, 1877, entitled "An act to provide for the funding of the warrants and outstanding indebtedness of counties." Section 1 reads as follows: "That the county commissioners of any county in the state of Nebraska be and are hereby authorized and empowered to issue coupon bonds, of such denomination as they may deem best, sufficient to pay the outstanding and unpaid warrants and indebtedness of such county; provided that the county commissioners of any such county may limit the provisions of this subdivision to any fund or funds of said county; provided further, that in no event shall bonds be issued to a greater amount than ten per cent of the assessed valuation of such county, and provided further, that the county board shall first submit the question of issuing such bonds to a vote of the qualified electors of such county." By section 132, p. 387, Laws 1879, which went into effect September 1, 1879, the foregoing section is re-enacted verbatim, except that the word "commissioners" is changed to "board" in the later act. By another provision in the Laws of 1879 it is enacted: "If it appears that two-thirds of the votes cast are in favor of the proposition, and the requirements of the law have been fully complied with, the same shall be entered at large by the county board upon the book containing the record of their proceedings, and they shall then have power to levy and collect the special tax in the same manner that the other county taxes are collected. Propositions thus acted upon cannot be rescinded by the county board." Laws 1879, p. 364, § 30.

At a regular meeting of the board of county commissioners of said Valley county, Neb., held October 7, 1879, it was resolved that the proposition be submitted to the qualified electors of said county of Valley to issue the coupon bonds of said county of specified denominations to the amount of $32,000, to pay the outstanding indebtedness of the said county in a specified order; such bonds to be dated January 1, 1880, and payable at the office of the county treasurer of said county, and to run 20 years, with interest at the rate of 7 per cent., payable annually, with a provision to be inserted in the bonds that they should be redeemable after 10 years upon specified notice; that the bonds should not be sold for less than 90 per cent. of par value; that a tax should be levied and collected annually, as provided by law, to pay the interest and provide for the principal, with limitations; and that the said

proposition be submitted to be voted on by ballot (the forms of which were prescribed) at the general election to be held November 4, 1879. In accordance with the terms of such resolution, the question of issuing said bonds, and levying and collecting taxes therefor, was regularly submitted to the qualified electors of said Valley county at the said general election on November 4, 1879, and the vote thereon was duly canvassed, and the proper abstract showing the result of the election and such vote was returned to the board of county commissioners; and on November 24, 1879, at a legal meeting of said board, the following resolution was adopted and entered at large upon the book containing the records of their proceedings: "Whereas, the board of county commissioners of Valley county, Nebraska, did on the 7th day of October, 1879, submit to the people of said county the question of raising $32,000 in bonds of said Valley county, for the purpose of funding the outstanding and unpaid warrants and indebtedness of said county; and whereas, the official abstract of votes cast at the general election held in said county of Valley and state of Nebraska, on the 4th day of November, A. D. 1879, regarding said proposition, was laid before the board at a regularly called meeting thereof, held this 24th day of November, A. D. 1879, said abstract showing that two hundred and twenty-seven (227) votes were cast in favor of said proposition, and that nine (9) votes were cast against said proposition, and it appearing that more than two-thirds of the votes cast were in favor of said proposition: Now, therefore, be it resolved that the proposition for issuing $32,000 in bonds of said county, for the purpose above stated, be, and the same is hereby, adopted. Resolved, that we issue coupon bonds in denominations not less than $50.00, or more than $1,000.00, not exceeding $32,000, to pay the outstanding and unpaid warrants and indebtedness of said county; said bonds to be issued and sold in accordance with the proposition submitted to the legal electors of said county at the general election held on the 4th day of November, 1879, and now of record on page 157 of Commissioners' Records." Thereafter, on the 6th day of January, 1880, said board of county commissioners issued the coupon bonds of said Valley county, as stated in the petition, to the amount of $32,000, viz. 60 bonds of $500 each, and 20 bonds of $100. Each of said bonds contained on its face the following recitals: "This debt is authorized by an act of the legislature of the state of Nebraska, entitled 'An act to provide for the funding of the warrants and outstanding indebtedness of counties,' approved February 17th, A. D. 1877, in pursuance whereof, on the 4th day of November, A. D. 1879, the commissioners of Valley county, in said state, submitted to the electors thereof, in the manner prescribed by law, the following proposition: 'Shall the county of Valley issue its coupon bonds, in denominations of not less than fifty, or more than one thousand dollars, to the amount of thirty-two thousand dollars, to pay the outstanding and unpaid warrants and indebtedness of said county, in the following order: First, the general fund; second, the special bridge fund; third, the land road fund,— said bonds to be dated January 1, 1880, and payable at the office of the county treasurer of said county, and to run twenty years, with interest at the rate of seven per cent. per annum, payable annually; provided that such bonds shall be redeemable at any time after ten years, upon giving at least thirty days' notice of such time of payment, in a paper published in said county; and, after the completion of said publication, said bonds shall cease to draw interest?' Which said proposition, upon the 4th day of November, at the general election, was decided in the affirmative by a majority of the electors of said county. In accordance therewith, the said commissioners have entered the same upon the records of said county, given due notice of the adoption of said proposition, and executed the bonds here issued." Said bonds were all sold to one Taylor, a resident of Nebraska, for 92 cents on the dollar of their face value, and the proceeds of the sale was paid into the treasury of said Valley county. Within two years thereafter, they were sold to the present holders for 97 cents on the dollar. At the same general election held on November 4, 1879, there were cast in said Valley county 361 votes for candidates for a judicial office. After the assessment rolls returned by the precinct assessors in the spring of 1879 came before and were acted upon by the county board of equalization, the county clerk of Valley county

made out in due form, and certified and delivered to the auditor of the state of Nebraska, his official abstract of the assessment of said Valley county for the year 1879, showing the total assessed valuation of said county for that year to be the sum of $326,768, and the state and county taxes for that year were levied upon the assessment shown by the said abstract. Said abstract did not on its face purport to cover the assessment of any property outside of Valley county. The precinct assessment rolls of that county proper, when footed, only showed an assessed valuation of $279,349, and there was some unorganized territory then attached to said Valley county for judicial, election, and revenue purposes, the assessed valuation of which may have been included in said abstract, but did not on the face of said abstract appear to have been so included. For the years 1881 to 1892, inclusive, said county of Valley raised by taxation, and paid, all the interest accruing annually on said bonds, and including and since the year 1893 it has refused to pay any of the coupons maturing upon said bonds. Before and at the time when said proposition to issue said bonds was submitted to vote as aforesaid, and when said bonds were issued as aforesaid, there were outstanding and unpaid other bonds issued by said Valley county, as bridge bonds, issued for works of internal improvement, to the amount of $6,000. The defendant in error is a bona fide holder of the bonds to which belonged the coupons for which he recovered judgment, and of such coupons, without any actual notice of any alleged defects or irregularities connected with the issue of such bonds.

L. C. Burr (Charles L. Burr, C. A. Munn, Clements Bros., and Coffin & Stone with him on the brief), for plaintiff in error.

C. C. Flansburg (H. A. Babcock with him on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, delivered the opinion of the court.

1. The acts of the Nebraska legislature of 1877 and 1879, above referred to, authorized the issuance of the bonds of a county to pay its outstanding and unpaid warrants and indebtedness, upon the requisite action of the county board and vote of the qualified electors, to an amount not exceeding 10 per cent. of the assessed valuation of the county, irrespective of bonds previously issued for works of internal improvements or other lawful special purpose. The language of these acts plainly confines the 10 per cent. limitation contained in them to the bonds to be issued under the provisions of those acts. The case of State v. Babcock, 18 Neb. 141, 24 N. W. 556, related to bonds issued after the amendment of 1883, which made a material change in the law.

2. The abstract of assessment of property in Valley county for the year 1879, made by the county clerk, and by him certified and transmitted to the auditor of the state, was a public record of the assessment which the statute required to be so made and transmitted, after the assessment books had been equalized and corrected by the county board. A purchaser of bonds, in determining whether the aggregate issue exceeded the statutory limit of 10 per cent. of the assessed valuation, had the right to rely upon this abstract as a public record, authorized by statute to be made, as showing the amount of the assessment as finally corrected and established by

the board of equalization, and was not required to look through the books of the precinct assessors, and minutes of the board of equalization, if such minutes were kept, to verify such public record. It is needless, therefore, to consider whether the indebtedness funded by these bonds may not have rested upon the attached territory, as well as upon Valley county proper.

3. By the Laws of 1879 (page 364, § 30) provision is made for ascertaining and making a public record of the result of the vote of the qualified electors of a county, where such a proposition has been submitted to vote, pursuant to law. It is enacted:

"If it appears that two-thirds of the votes cast are in favor of the proposition, and the requirements of law have been fully complied with, the same shall be entered at large by the county board upon the book containing the record of their proceedings."

This vests in the county board the power of determining whether or not it appears that two-thirds of the votes cast are in favor of the proposition, and whether or not the requirements of the law have been fully complied with. And, if they so determine, the act makes it their duty to enter such determination at large upon the book containing the record of their proceedings. Such action by the county board, and entry thereof in its records, constitutes the final and complete record evidence provided for by the legislature, of the submission of the question, the compliance with all requirements, and of the result of the vote. A purchaser of bonds need look no further than to the record so provided for. In this case such record was full and complete, and showed upon its face that the proposition submitted had been carried by a greater than two-thirds vote, and that the requirements of the law had been complied with. The judgment is affirmed.

THAYER, Circuit Judge. I concur in the view that a purchaser of the bonds in suit was entitled to rely on the abstract of the assessment which was made by the county clerk, and certified to the auditor of the state of Nebraska, for the following reasons: The act under which the assessment was made (Laws Neb. 1879, p. 276, §§ 52, 54, 65) did not require the precinct assessors to state the aggregate value of property, real and personal, found in their respective precincts; and a person who consulted the precinct assessment books after they had been returned to the county clerk could not ascertain therefrom the aggregate valuation of all property in the county, except by a careful examination and computation. Besides, the board of equalization was authorized to make changes in the assessments after the precinct assessment books had been returned to the county clerk (Id. § 70); and no provision of the act, so far as I am able to discover, made it the duty of the board to note the changes thus made on the precinct assessment books. The act, however, did require the clerk to make an abstract of the assessment, showing the total assessed valuation of all property, real and personal, which abstract was to be made and certified to the auditor after the board of equalization had discharged its functions, and had made such alterations in the va-

rious precinct assessments as it deemed proper. The act further directed that "the values to be given in said abstract shall be the valuations assessed by the assessor, and equalized and corrected as hereinbefore provided." Id. § 72. Moreover, the special finding of facts which was made by the trial court shows that the levy of taxes for the year 1879, for state and county purposes, was made upon the basis of the abstract which was made by the county clerk, showing a total assessed valuation of $326,768. Under these circumstances, the abstract of the assessment which was certified by the county clerk to the auditor of the state would seem to have been the only authentic public record showing the total assessed valuation, and upon that record a purchaser of the bonds in suit was entitled to rely. I also concur in the further views expressed in the opinion in chief.